**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 05-CV-512-JBC

TOMMY HUBBS                                                          PETITIONER

VS:                     **MEMORANDUM OPINION AND ORDER**

STEPHEN DEWALT, Warden                                              RESPONDENT

Tommy Hubbs, who is incarcerated in the Federal Medical Center ("FMC") in Lexington, Kentucky, has filed a *pro se* petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, and has paid the $5.00 district court filing fee.

This matter is now before the court for screening.  28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

<u>CLAIMS</u>

The petitioner claims that the Bureau of Prisons ("BOP") has denied him compassionate release (1) although he qualifies therefor under the applicable statute; (2) using a standard which is not in the statute but in policy not properly promulgated; (3) in violation of the U.S. Constitution's Fifth Amendment guarantee of due process and Eighth Amendment prohibition against cruel and unusual punishment; (4) contrary to Congressional intent; and (5) in an abuse of its discretion.

## FACTUAL ALLEGATIONS

The following is a summary or construction of the factual allegations as contained in the petition and supporting documents.

The petitioner pled guilty in two criminal proceedings in this court, *United States v. Hubbs*, 6:02-CR-100-7-KKC and 6:02-CR-106-KKC.  He attaches copies of his December 20, 2002 presentence report ("PSR") and of both Judgments, which impose concurrent 57-month terms of imprisonment and are dated February 24, 2003.  Exhibits [hereinafter "Ex."] 9-10.  On March 13, 2003, he arrived at FMC-Lexington.

One month after the petitioner's arrival at the medical center, on April 18, 2003, his right leg was amputated above the knee; and a few weeks thereafter, on May 1, 2003, his left leg was amputated above the knee.  The petitioner alleges that the difficulties which he faces as a double-amputee would be "most difficult" on the outside and for someone in prison, the "hardships . . . cannot be over-emphasized."

The petitioner claims that although his PSR reveals that he was plagued with multiple medical difficulties at the time, the loss of his legs could not have been foreseen at the time of his sentencing.  Therefore, he qualifies for compassionate release under the plain language of 18 U.S.C. § 3582, which conditions an earlier release from imprisonment if the court "finds that extraordinary and compelling reasons warrant such a reduction" in the sentence(s) originally imposed.  18 U.S.C. § 3582(c)(1)(A).  Further, he argues, he meets the criteria for compassionate release under the BOP's promulgated regulations, which effectuate the statute.  28 C.F.R. §

2

571.60 provides that the BOP "uses 18 U.S.C. 4205(g) and 18 U.S.C. § 3582(c)(1)(A) in particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing." *Id*.

Therefore, in 2005, consistent with the rest of the regulatory scheme, the petitioner began the process for obtaining a reduction by applying to the warden. *See* 28 C.F.R. § 571.60 - .64. Hubbs claimed to qualify because the loss of both legs within months of his surrender was not foreseeable; pointed out that his November 6, 2006, date of release was then 1 ½ years away; and set out his proposed release plans (a requirement of 28 C.F.R. § 571.61). The Warden's response of July 11, 2005, shows that his request was denied after a review by a "Bio-ethics Committee," which determined that the petitioner's sentencing court "was well-aware of the critical condition of your legs, prior to your sentencing." Ex. 4.

The Warden also relied on the BOP Program Statement (PS) 5050.46, *Compassionate Release; Procedures for Implementation of 18 U.S.C. § 3582(c)(1)(A)* and on 28 C.F.R. § 571.60, explaining that the BOP considers the regulatory language, "particularly extraordinary or compelling circumstances," to be "circumstances of terminal illness with a predictable life expectancy that would likely prevent a person from completing his/her sentence." *Id.* "The amputation of your legs likely saved your life and does not prevent you from completing your sentence." *Id.*

The petitioner argues that requiring a terminal illness and an assessment as to whether the prisoner would be able to complete his sentence is not in the statute or

properly promulgated regulations. Upon his appeal of the warden's response, the BOP

Regional Director reiterated that compassionate release is, indeed, so limited and

affirmed the institutional decision. App. 6. At the final level of appeal, on November

7, 2005, the Administrator of National Inmate Appeals relied on the same authority

limiting a grant of relief to the terminally ill who will not complete the sentence

imposed.[1] The BOP's national office concurred with the lower officials' decisions,

which were deemed "appropriate and pursuant to policy and regulation, and not an

abuse of discretion." App. 8.

The petitioner having exhausted the BOP administrative appeals and the BOP

having steadfastly refused to request compassionate release for him, Hubbs filed this

action asking that the court order the BOP to present a request for compassionate

release to his sentencing court.

DISCUSSION

The court first examines the statute upon which the petitioner relies, 18 U.S.C.

§ 3582. The statute forbids modification of any term of imprisonment, unless the

case falls within one of three exceptions   The first exception in the statute and the

one relied upon in this case is in § 3582(c)(1)(A), which does not actually contain the

phrase "compassionate release," but is sometimes referred to as "the 'compassionate

release' provision." *Morales v. United States*, 353 F.Supp.2d 204, 205 (D.Mass.

---

[1] Or persons "who suffer from a severely debilitating and irreversible mental or physical medical condition and are unable to provide self-care." This last qualifying alternative is not raised in this case.

2005).

18 U.S.C. § 3582(c)(1)(A) provides that a court may "reduce the term of imprisonment" which had originally been imposed on the prisoner only in certain circumstances. First, the statute requires that the request for the reduction under this subsection be made only "upon motion of the Director of the Bureau of Prisons." *Id.* Since the BOP refused to make such a motion for the instant petitioner, this court has no statutory authority to reduce Hubbs's sentence. Therefore, the court simply cannot modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). *Morales*, 353 F.Supp.2d at 205.

Under its 28 U.S.C. § 2241 jurisdiction, this court may grant habeas relief to a prisoner who challenges the continuing execution of his sentence. This remedy is limited to the prisoner's showing that his confinement violates "the Constitution or laws or treaties of the United States." *Id.* Petitioner Hubbs has not satisfied this standard, however. "A convicted prisoner does not have a constitutional right to be released before the expiration of a valid sentence." *Villarreal v. United States*, 2005 WL 1177873 (E.D.Tex. 2005) (unreported).

Nor does this petitioner state a Fifth or Eighth Amendment claim. In *Engle v. United States*, 26 Fed.Appx. 394 (6th Cir. 2001) (unpublished), a case arising from this court, the appellate court in this circuit rejected a similar Eighth Amendment claim, brought by a terminally ill prisoner. "Although the incarceration of a terminally ill prisoner may be 'cruel,' it is not 'unusual.'" *Id.* at 397 (citing *Harmelin v. Michigan*,

501 U.S. 957. 994 (1991), and *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

Further, the Sixth Circuit found that early release "is a matter more properly weighed

by the legislature and prison administration than the courts." *Id*.

Although the instant plaintiff has referred to a violation of his due process

rights, it is only a reference, with no factual or legal support. *See Wells v. Brown*, 891

F.2d 591, 594 (6th Cir. 1989). When a plaintiff/petitioner generally alleges that he

has been deprived of rights, privileges or immunities secured by the federal

Constitution and/or laws and/or amendments thereto, but the petitioner/plaintiff

nowhere identifies the substance of the alleged deprivation, such conclusory

statements are insufficient under § 1983. *O'Hara v. Wigginton*, 24 F.3d 823, 826

(6th Cir. 1994).

To the extent that the petitioner suggests that the BOP acted in violation of his

substantive due process rights, he also fails to state a claim. "A plaintiff asserting a

substantive due process claim faces a virtually insurmountable uphill struggle. He

must show that the government conduct in question was so reprehensible as to 'shock

the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir.

1995) (citing *Rochin v. California*, 342 U.S. 165 (1951)); *Mertik v. Blalock*, 983 F.2d

1353, 1367-68 (6th Cir. 1993)). The facts to support such a claim simply are not

present here.

The court construes the allegations to include a claim under the Administrative

Procedures Act ("APA") as well. Some circuits have held that the decision not to file

6

a § 3582 motion is not reviewable.  *See Todd v. Federal Bureau of Prisons*, 31 Fed.Appx. 833 at *2 (5th Cir. 2002) (unreported) (not deciding the issue but citing cases from the Seventh, Ninth, and Eleventh Circuits).  Regardless, however, even if the court assumes it has jurisdiction under the APA, Petitioner Hubbs's claim would fail.

As the *Todd* court noted, the APA requires the court to hold unlawful and set aside any agency action that is arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with the law.  Also like the *Todd* court, this court finds that the BOP action of which the plaintiff complains fails to meet any of these standards.  Rather, the BOP action is consistent with explicit laws and regulations.

As noted in the BOP administrative responses, the statute gives the BOP the discretion to decide to bring motions only for "extraordinary and compelling reasons"; and the regulation to effectuate and guide the BOP's actions, 28 C.F.R. § 571.60, restricts the motions to "particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing."  *Id.*

To the extent Petitioner Hubbs challenges the BOP's program statement as an improper limitation of the statute, decided without compliance with the APA's requirements of notice and comment, the court examines PS 5050.46.  This program statement contains the policy that the regulatory language, "particularly extraordinary or compelling circumstances which could not reasonably have been foreseen," will mean "circumstances of terminal illness with a predictable life expectancy that would

likely prevent a person from completing his/her sentence."

The BOP's policy of generally restricting compassionate release only to these inmates is not in the statute or the regulation.  However, this statement in PS 5050.46 serves to permit the exercise of discretion on the part of the Bureau.  Therefore, it is an interpretive rule; and as such is exempt from the notice and comment rulemaking procedures of the APA.  *Williams v. Van Buren*, 117 Fed.Appx. 985 (5th Cir. 2004) (unpublished).

"Where, as here, 'Congress has enacted a law that does not answer the precise question at issue, all [the court] must decide is whether the Bureau … has filled the statutory gap in a way that is reasonable in light of the legislature's revealed design.'" *United States v. Maldonado*, 138 F.Supp.2d 328, 333 (E.D.N.Y. 2001) (quoting decisions of the United States Supreme Court).  The *Maldonado* court went on to find the limitation which the plaintiff here challenges to be "reasonable, because it limits the number of people eligible for compassionate release to those cases that are truly extraordinary and that may be decided on an objective basis."  *Id.*

This court agrees with the *Maldonado* court's disposition and rationale and concludes that the BOP's interpretation of 18 U.S.C. § 3582(c)(1)(A) was reasonable as applied to Petitioner Hubbs.  In summary, this court finds that the BOP's decision not to grant Hubbs's request for compassionate release was made in accordance with valid law and policy.  Further, the BOP did not abuse its discretion when it refused to request release for Petitioner Hubbs.  Nor was the BOP's final decision unreasonable,

arbitrary or capricious.  *Todd,* 31 Fed.Appx. at *2.

CONCLUSION

Accordingly, it is **ORDERED** that Petitioner Tommy Hubbs's petition for writ of

habeas corpus is **DENIED.**  Judgment shall be entered contemporaneously with this

Memorandum Opinion and Order in favor of the respondent.

Signed on May 8, 2006

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY